IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

FILED

2026 MAY -5 PM 4: 24

CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____
DEPUTY

TIMOTHY McQUAID and RAQUEL McQUAID (GIBSON),

Plaintiffs,

v.

TESLA, INC.,

Defendant.

Civil Action No: **1:26CV01192** ADA

---

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

---

I. PARTIES

1. Plaintiff Timothy McQuaid is an individual residing in Pflugerville, Travis County, Texas. At all relevant times, Plaintiff was employed by Tesla as an Emergency Services Specialist at the Austin Gigafactory. Plaintiff is the lessee of the Subject Vehicle and the spouse of Plaintiff Raquel McQuaid (Gibson).

2. Plaintiff Raquel McQuaid (Gibson) is an individual residing in Pflugerville, Travis County, Texas. On January 6, 2026, Plaintiff Raquel McQuaid (Gibson) was operating the leased Subject Vehicle with the couple's dog, Raptor, when the vehicle entered a silent, unrecoverable degradation cascade caused by a design defect in Tesla's thermal management and safety-system fault-handling architecture.

3. Defendant Tesla, Inc. is a Delaware corporation with its principal place of business in Austin, Texas, doing business throughout the State of Texas. Tesla designs, manufactures, markets, and sells electric vehicles, including the Model 3 at issue in this case. Tesla also provides insurance and warranty services through its wholly owned subsidiaries.

---

## II. JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 over Plaintiffs' FMLA retaliation claim (Count V). The Court has supplemental jurisdiction over the related state-law claims pursuant to 28 U.S.C. § 1367(a) because they form part of the same case or controversy.

5. Venue is proper in the Austin Division of the Western District of Texas pursuant to 28 U.S.C. § 1391 because Defendant resides in this District and a substantial part of the events giving rise to the claims occurred here.

---

## III. FACTUAL BACKGROUND

A. The Subject Vehicle and Crash

6. On January 6, 2026, Plaintiff Raquel McQuaid (Gibson) was operating Plaintiff's 2023 Tesla Model 3 (VIN: 5YJ3E1EA6PF674770) with the couple's dog, Raptor, in Pflugerville, Texas,

when the vehicle entered a silent, unrecoverable degradation cascade lasting 6 minutes and 12 seconds immediately preceding a two-event collision sequence. This cascade was caused by a design defect in the vehicle's thermal management and safety-system fault-handling architecture.

7. The subject vehicle was manufactured by Tesla and equipped with Autopilot and Automatic Emergency Braking ("AEB") systems that Tesla represented would enhance safety and prevent collisions.

8. Plaintiff Timothy McQuaid arrived at the crash scene approximately 3–4 minutes after impact as the first responder. He extricated his wife (who was unable to self-extricate) and dog Raptor from the totaled vehicle, provided immediate medical care using his firefighter-paramedic training (including C-spine precautions). This first-responder trauma is a separate and distinct damages element.

B. The Silent Degradation Cascade — Verified Exclusively by Tesla's Own EDR Data

9. Tesla's own Event Data Recorder ("EDR") data, produced in response to Plaintiff's Data Privacy Request in April 2026 (Tesla Data Privacy Request EDR Files – raw .edr binary + high-rate .csv telemetry), reveals the following sequence of events:

KEY FINDINGS FROM TESLA'S OWN EDR DATA  (Tesla Data Privacy Request EDR Files – raw .edr binary + high-rate .csv telemetry, produced April 2026):

- OVERHEAT_PROTECT_FANONLY, 3.0 activated at 20:24:44.318 UTC (thermal protection fan-only mode).

- FAULT, 14.0 (repeated generic CAN/module-level fault logged across multiple pages).

- AEB_CAN_STATE_UNAVAILABLE_ALERT and  AEB_CAN_STATE_FAULT (AEB degraded and faulted).

- ABS_EVENT_ACTIVE_FRONT, ABS_EVENT_ACTIVE_FRONT_REAR, and ABS_EVENT_NOT_ACTIVE

- ESP_FAULT_LAMP_ON and VDC_STATE_FAULTED  (stability system faulted).

- RCM_WARNING_INDICATOR_ON (airbag warning indicator activated).

- LSS_STATE_FAULT (Lane Support System fault).

- RCM_COLLISION_EVENT_ACTIVE (collision event detected).

- Accelerator pedal position reached a peak of 120.00% at 20:25:16.330 UTC during the ongoing 6-minute-12-second silent degradation cascade before dropping sharply to 0.00% immediately upon brake application at 20:25:16.635 UTC and remaining variable thereafter — demonstrating normal driver response with no evidence of sustained accelerator input, pedal lock, or unintended acceleration.

- The driver-facing ABS/EBD/ESP fault warning lamps remained completely OFF and provided no visible alert to the driver throughout the entire 6-minute-12-second degradation cascade and through both impacts, despite 27+ internal fault cycles being logged in the EDR.

- Post-impact: Dense fault window with 100+ FAULT 14.0 entries in 1.6 seconds.

Defendant Tesla, Inc. knew or should have known of the dangerous condition created by the ADAS/EDR system's propensity for silent degradation. Despite this knowledge, Tesla failed to provide any warning or instruction to operators that the vehicle could suddenly and without notice lose braking and steering authority. This failure to warn was a producing cause of Plaintiffs' injuries.

10. All timestamps, fault codes, and values cited herein are taken directly from Tesla's Data Privacy Request EDR Files (VIN 5YJ3E1EA6PF674770), produced April 2026.

C. Top Fault Types During Critical Window (20:24:44–20:31:18 UTC) – From Tesla EDR Data Only

11. The following faults were the most frequently logged during the critical window, as documented in Tesla's EDR data:

- OVERHEAT_PROTECT_FANONLY, 3.0

- FAULT, 14.0 (repeated)

- AEB_CAN_STATE_UNAVAILABLE_ALERT / AEB_CAN_STATE_FAULT

- ABS_EVENT_ACTIVE_FRONT / ACTIVE_FRONT_REAR / NOT_ACTIVE

- ESP_FAULT_LAMP_ON / VDC_STATE_FAULTED

- RCM_WARNING_INDICATOR_ON

- LSS_STATE_FAULT

- RCM_COLLISION_EVENT_ACTIVE

Full table available in Exhibit A – Tesla EDR Forensic Report.

D. Master Timeline — Critical Window (20:24:00–20:32:00 UTC) – From Tesla EDR Data

12. The following timeline is consolidated from Tesla Data Privacy Request EDR Files (raw .edr binary and high-rate .csv telemetry). Full table available in Exhibit A – Tesla EDR Forensic Report.

E. Tesla's Knowledge of the Defect and Failure to Warn

13. Tesla possessed the raw EDR data for Plaintiff's vehicle from the moment of the crash on January 6, 2026. Despite actual knowledge of the defect, Tesla failed to correct the official narrative, produce unaltered telemetry, or warn Plaintiff or other owners of the risk of silent, unrecoverable safety system disablement.

F. Spoliation — Tesla's Failure to Preserve Evidence

14. On April 17, 2026, Plaintiff served Tesla with a formal preservation demand under Texas law, anticipating litigation. Tesla had already possessed the raw EDR data for 101 days at that point. Despite the preservation demand, Tesla failed to preserve and produce unaltered EDR data, including the original .edr binary file. Tesla produced only limited, low-value pre-crash dashcam clips containing zero impact footage or fault-lamp visuals. Tesla never produced the native raw EDR binary, full CAN bus logs, or unaltered telemetry despite specific demand. This constitutes spoliation under Brookshire Bros., Ltd. v. Aldridge, 438 S.W.3d 9 (Tex. 2014), warranting an adverse inference that the missing evidence would have been unfavorable to Tesla.

G. Bad Faith Claims Handling — Tesla Insurance

15. Tesla Insurance processed Plaintiff's total-loss claim (Claim #593722CL6599WYU71) on March 18, 2026, paying only $1,000 on a $17,365.43 net repair estimate. At the time of this claims decision, Tesla Insurance was in possession of EDR data showing 6 minutes and 12 seconds of silent safety system failure. Tesla Insurance's $1,000 payout constitutes bad faith claims handling under Texas Insurance Code §541.060. Tesla, Inc. is directly liable because it controls Tesla Insurance and ratified the bad-faith conduct.

H. FMLA Retaliation and Constructive Discharge

16. Plaintiff Timothy McQuaid was on approved FMLA leave effective January 12, 2026 (Sedgwick Claim #4A2601D9W280001GI) to care for his wife Raquel's crash-aggravated serious health condition. On January 12, 2026, Tesla EHS Manager Casey Stanaland texted Plaintiff: "If you don't have any sick leave left you may accrue sick points. I'll see what I can do with HR." Later that afternoon, Casey texted: "Tim, check your Tesla email. HR should be sending you something so you can take time off to take care of your wife."

While on protected FMLA leave, Plaintiff received phone calls and texts from coworkers expressing that they were worried he would be fired if he did not return to work. In good faith, having timely submitted all required medical documentation, Plaintiff returned to work early on January 16, 2026. Upon his return, he was immediately subjected to hostile interrogation by Operations Lead Jordan Marsh and coworkers regarding the legitimacy and extent of his wife's injuries. This created an intolerable hostile work environment, leading directly to his constructive discharge/resignation on January 17, 2026.

17. Plaintiff was constructively discharged on January 17, 2026 — just 11 days after the crash and 5 days after beginning protected FMLA leave. The temporal proximity between Plaintiff's protected activity and adverse employment action supports an inference of FMLA retaliation.

I. NHTSA Complaint and Federal Filing

18. On April 21, 2026 — four days after the preservation demand — Plaintiff filed NHTSA Vehicle Owner's Questionnaire #11732616 describing the identical 6-minute-12-second ADAS/EDR degradation cascade. The complaint references active NHTSA Engineering Analysis EA26002. Tesla has not corrected or supplemented that public federal filing despite possessing the contradictory EDR data since January 6, 2026.

J. Crash Damage and Severity

19. Plaintiff recovered four crash clips from the Subject Vehicle's USB drive showing the two-event collision sequence with no AEB activation.

20. The Subject Vehicle sustained catastrophic driver-side damage, including crushed doors, deployed side curtain and seatbelt airbags, shattered windows, and interior debris.

K. Failed eCall and Time Discrepancy

21. The crash occurred at approximately 20:31:16 UTC (approximately 14:31 CST) on January 6, 2026. However, according to the official Pflugerville Police Department CAD Call Detail Report (Call Number 2600713), the initial 911 call was not received until 14:36:47 CST — a delay of approximately five to six minutes after the crash.

22. Tesla's vehicle was equipped with an automatic emergency calling system ("eCall") designed to automatically notify emergency services in the event of a crash involving airbag deployment. Despite clear evidence of airbag deployment, no automatic eCall notification was made. The first notification to emergency services came from a passerby at 14:36:47 CST.

L. Pre-Suit Communications and Tesla's Pattern of Non-Engagement on the Merits

23. Beginning March 11, 2026, Plaintiff sent a series of good-faith pre-suit demands to Tesla escalating from $2,500,000 to $52,000,000 gross after providing complete EDR forensic packages.

24. On April 7, 2026, at 11:25 AM CDT, Jordan Fink of Tesla sent Tesla's ONLY written response to any global demand: a brief acknowledgment confirming receipt and stating only that "to the extent any agency complaints remain pending, Tesla will respond through the appropriate agency channels." Tesla made no substantive engagement on the merits, no discussion of the EDR defects, no counteroffer, and no reference to the preservation demand or spoliation warnings.

25. The April 9, 2026, pre-suit deadline passed with zero substantive response or counteroffer from Tesla. Tesla maintained 42+ days of complete silence on the merits after the April 17 preservation demand and ignored the April 28, 2026 COB hard deadline.

---

IV. COUNTS

COUNT I — DESIGN DEFECT

(Tex. Civ. Prac. & Rem. Code § 82.005)

31. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

32. Tesla's ADAS thermal management system is defectively designed because it permits silent, unrecoverable disablement of Autopilot and AEB for 6 minutes and 12 seconds without illuminating any fault lamp or providing driver warning. This design was unreasonably dangerous and existed at the time the vehicle left Tesla's control.

33. A safer alternative design was available and economically and technologically feasible at the time of manufacture, including but not limited to: (a) redundant thermal sensors and cooling systems that prevent OVERHEAT_PROTECT_FANONLY from cascading into complete safety-system disablement; (b) mandatory illumination of fault lamps within 5 seconds of any safety-critical system entering FAULT or UNAVAILABLE status; (c) independent eCall fallback circuitry that operates even when primary vehicle systems are degraded; and (d) haptic and audible warnings that cannot be suppressed during safety-system faults.

34. The defective design was a producing cause of the crash and Plaintiffs' injuries. But for the 6-minute-12-second silent disablement of AEB and Autopilot without warning, the driver (Raquel McQuaid) would have had the opportunity to take corrective action, or the vehicle would have automatically braked, preventing or mitigating the collision. Tesla's own EDR data confirms zero AEB intervention despite the vehicle traveling at highway speed into a known hazard.

## COUNT II — MARKETING DEFECT / FAILURE TO WARN

(Tex. Civ. Prac. & Rem. Code Ch. 82 and Texas common law products liability)

36. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

37. Tesla failed to warn consumers, including Plaintiffs, that the vehicle's safety systems could enter a silent, unrecoverable disabled state for extended periods (including 6 minutes and 12 seconds) without illuminating any fault lamps or providing any driver warning. This failure to warn rendered the vehicle unreasonably dangerous. Tesla had actual knowledge of this dangerous condition through its own EDR data, internal testing, and the ongoing NHTSA Engineering Analysis EA26002.

## COUNT III — SPOLIATION OF EVIDENCE AND REQUEST FOR ADVERSE INFERENCE AND SANCTIONS

(Brookshire Bros., Ltd. v. Aldridge, 438 S.W.3d 9 (Tex. 2014); FRCP 37(e))

38. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

39. Tesla had a duty to preserve all raw EDR, telemetry, and diagnostic data from the moment it knew or reasonably should have known that litigation was imminent — no later than April 17, 2026, when Plaintiff served his formal Preservation Demand. Tesla failed to preserve this evidence in native, unaltered form. Tesla acted with a culpable state of mind. This constitutes spoliation under Brookshire Bros., Ltd. v. Aldridge, 438 S.W.3d 9 (Tex. 2014), warranting an adverse inference that the missing evidence would have been unfavorable to Tesla.

COUNT IV — BAD FAITH CLAIMS HANDLING

(Tex. Ins. Code § 541.060)

41. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

42. Tesla Insurance, acting as agent for Tesla, Inc., knowingly processed the total-loss claim (Claim #593722CL6599WYU71) while in possession of evidence of the 6-minute-12-second silent failure, yet paid only $1,000 on a documented $17,365.43 net repair estimate. This constitutes bad-faith claims handling for which treble damages are available under Tex. Ins. Code § 541.060. Tesla, Inc. is directly liable because it controls Tesla Insurance and ratified the bad-faith conduct.

COUNT V — FMLA RETALIATION / CONSTRUCTIVE DISCHARGE

(29 U.S.C. § 2615)

43. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

44. The crash caused Plaintiff Timothy McQuaid to take protected FMLA leave (Sedgwick Claim #4A2601D9W280001GI, approved effective January 12, 2026) to care for his spouse Raquel McQuaid (Gibson)'s serious health condition.

45. On January 12, 2026, Tesla EHS Manager Casey Stanaland confirmed Tesla's knowledge of Plaintiff's FMLA need, texting: "If you don't have any sick leave left you may accrue sick points. I'll see what I can do with HR" and "HR should be sending you something so you can take time off to take care of your wife."

46. On January 16, 2026, upon Plaintiff's early return from protected FMLA leave, Operations Lead Jordan Marsh and coworkers immediately interrogated Plaintiff in front of day and night shift about the legitimacy and extent of his wife's injuries. Plaintiff contemporaneously messaged in the group chat: "I walked into the room and I'm being immediately interrogated on

my wife's injuries." Group chat messages from the leave period confirm pre-return pressure: "you would get fired if you didn't come back in."

47. Tesla's attendance policy and termination threats during Plaintiff's FMLA leave, combined with the hostile interrogation upon return, constitute unlawful interference and retaliation under 29 U.S.C. § 2615, resulting in constructive discharge on January 17, 2026.

---

V. PRAYER FOR RELIEF

WHEREFORE, PLAINTIFFS TIMOTHY McQUAID AND RAQUEL McQUAID (GIBSON) RESPECTFULLY PRAY THAT THIS COURT:

A. Enter judgment in favor of Plaintiffs and against Defendant for actual damages in excess of $52,000,000, including but not limited to: past and future medical expenses, lost wages and earning capacity, pain and suffering, emotional distress, loss of consortium, first-responder trauma damages to Plaintiff Timothy McQuaid, fertility and reproductive health damages to Plaintiff Raquel McQuaid (Gibson), and property damage to the Subject Vehicle;

B. Award punitive damages of $25,000,000 to punish Tesla for its knowing, reckless, and callous disregard for the safety of its customers and employees;

C. Impose spoliation sanctions of $25,000,000 and enter an order granting an adverse inference instruction that the spoliated EDR data would have shown the safety systems were unavailable with no warning given for 6 minutes and 12 seconds, and that Tesla acted with a culpable state of mind in failing to preserve it;

D. Award treble damages under Tex. Ins. Code § 541.060 for Tesla Insurance's bad-faith claims handling;

E. Award pre- and post-judgment interest at the maximum legal rate, costs of suit, and reasonable attorney's fees;

F. Grant a trial by jury on all issues so triable; and

G. Grant such other and further relief as the Court deems just and proper.

---

DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all issues so triable.

Respectfully submitted,

Timothy McQuaid

Pro Se Plaintiff

7014 Pleasanton Parkway

Pflugerville, Texas 78660

(737) 254-9599

timmcqu@outlook.com

DATED: May 5, 2026

---

CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2026, I filed the foregoing Complaint with the Clerk of the United States District Court for the Western District of Texas, Austin Division, and will serve a true and correct copy of the same upon Defendant Tesla, Inc. in accordance with Rule 4 of the Federal Rules of Civil Procedure.

_____

Timothy McQuaid  , Raquel McQuaid